### RELIEF FOR EMPLOYEES SUFFERING FROM OCCUPATIONAL DISEASES.

Common Pleas Court of Hamilton County.

DAVID BROWN V. THE INDUSTRIAL COMMISSION OF OHIO.

Decided, May 16, 1914.

*Workmen's Compensation Law—Construction of, With Reference to Compensation for Diseases Induced by Occupation—Appeal from Determination by State Liability Board of Awards.*

The relief contemplated by the workmen's compensation law includes lead poisoning, where suffered by an employee in the course of his employment.

*Thomas L. Pogue,* Prosecuting Attorney, and *John V. Campbell* and *Carl M. Jacobs,* Assistant Prosecuting Attorneys, for the demurrer.

*Kelley, Huseman & Remke,* contra.

COSGRAVE, J.

This cause comes on to be heard on a demurrer to a petition appealing from the decision of the Industrial Commission of Ohio, for the reason that the facts stated in the petition do not constitute a cause of action.

The plaintiff, David Brown, alleges that on or about the 12th day of August, 1913, he was employed by the Eagle White Lead

Company, of Cincinnati, which was a contributor to the state insurance fund under the workmen's compensation law, and by reason thereof the plaintiff was entitled to compensation on the facts alleged in his petition.

The plaintiff alleges that while in the employment of the said Eagle White Lead Company, which was engaged in the manufacture of commercial white lead and other products usually manufactured in a lead factory, on or about August 26, 1913, while in the performance of work assigned to him by his foreman, that of charging and drawing the kilns, the plaintiff (appellant) was taken sick with what is known as lead colic or lead poisoning; that he was disabled and compelled to give up his work and go to a hospital for treatment and remained there until September 26th, when he left said hospital, though he has been under a doctor's care since, and has been totally or partially disabled from said injury, and that by reason of said disability and of the fact that the said Eagle White Lead Company was a contributor to the state insurance fund, he made application for compensation to the state liability board of awards, then charged with the duty of administering the state liability law; that the plaintiff's claim was No. 11,656 upon the records of said board of awards.

It appears further that the Industrial Commission of Ohio became the successor of said state liability board of awards and is now charged by law with the enforcement of the provisions of the workmen's compensation law.

It appears further from the petition that on or about the 2d of January, 1914, the defendant, the Industrial Commission of Ohio, issued a notice to appellant, disallowing his claim and denying him the right to participate at all in said state insurance fund, giving as a reason for said denial that appellant's disability was not caused by an injury sustained while in the course of his employment; that under the provisions of said law, he was entitled to appeal to the court of common pleas of the county in which he resided, for a reversal of the action of said board and for a trial before said common pleas court, or before a jury in said court, if he so demands.

The appeal seeks from this court the relief which the plaintiff alleges he is entitled to receive from said state board.

The demurrer admitting the truth of the allegations of the petition, presents for the determination of this court, the single question whether the injuries mentioned in this petition are of such a character as to entitle the plaintiff to relief under the workmen's compensation law of this state.

Section 36, or Code Section 1465-75, contains the provisions of the law which are presented to this court for construction and determination, and are as follows:

"The board shall have full power and authority to hear and determine all questions within its jurisdiction, and its decision thereon shall be final.

"Provided, however, in case the final action of such board denies the right of the claimant to participate at all in such fund on the ground that the injury was self-inflicted or on the ground that the accident did not arise in the course of employment, or upon any other ground going to the basis of the claimant's right, then the claimant within thirty (30) days after the notice of the final action of such board, may, by filing his appeal in the common pleas court of the county wherein the injury was inflicted, be entitled to a trial in the ordinary way, and be entitled to a jury if he demands it.    *    *    *

"Within thirty days after filing his appeal, the appellant shall file a petition in the ordinary form against such board as defendant and further pleadings shall be had in said cause according to the rules of civil procedure, and the court, or the jury, under the instructions of the court, if a jury is demanded, shall determine the right in his favor, shall fix his compensation within the limits and under the rules prescribed in this act; and any final judgment so obtained shall be paid by the state liability board of awards out of the state insurance fund in the same manner as such awards are paid by such board."

It is said this is the first case of this kind that has been presented to any of the common pleas courts of our state for adjudication. As this class of legislation is of somewhat recent origin, at least in this country, and as the enactments of the various states are not entirely similar, the court has not received much aid from any of the reported decisions except a few hereinafter referred to, which, indeed, have been very helpful.

In some of these enactments in other states, and indeed in our own, the use of the word injury in one part of the act and of accident in other parts, has made the question somewhat difficult of determination. Laws of a similar character have been in existence in Germany and in England for a great many years, and have been administered in those countries with very great success. The English courts in order to give effect to their act which provided for compensation where the workman received personal injury by accident, frequently held that disease induced by accidental means came within its provisions.

The courts of England strove to give effect to their workmen's compensation law, interpreting the words, "personal injury" as an injury to the person as distinguished from an injury to property. Finally, by a recent enactment, the law of England was made to cover diseases known as occupational diseases.

In some of our states, notably the state of Washington, it is significant that the law of that state specifically excludes occupational diseases, for it says:

"The words injury or injured as used in this act, refers only to an injury resulting from some fortuitous event as distinguished from the contraction of diseases."

The fair inference from the use of this language would be that the Legislature of that state well concluded that unless occupational diseases were expressly excluded, it would be reasonably inferred that they were included and covered by the words "injury" or "injured."

The California act covers only personal injuries accidentally sustained, and is very similar to the English act. The English act couples with the word injury or injured, the element of accident.

In a case in our own county, decided by Judge Pugh in the superior court of this city in January, 1914, reported in 15 N.P.(N.S.), 273, while it was not a case that came into that court by appeal because the common pleas court is the only court that has appellate jurisdiction in matters of this kind, His Honor, Judge Pugh, expressly held that the expression "personal injuries" as used in the workmen's compensation act of

this state, includes occupational diseases contracted in the course of employment. In the course of his opinion the learned judge uses the following language, in which this court heartily concurs:

"As a matter of fact, occupational diseases such as lead poison, anthrax, phosphorous poisoning and the like, are usually much more injurious to the sufferer than the pains, deformities and mutilations caused by accidents.

"Every reason that lies at the foundation of a law protecting a workman from the consequences of accidents applies in most cases with double force in cases of occupational diseases. To limit the workmen's compensation act to cases where injuries result from accident, requires that the word 'accident' or 'accidental' be read into the statute, and, under the usual rule of statutory construction, strong evidence of legislative intent to that effect should appear."

The Supreme Court of Massachusetts recently rendered two well considered opinions relative to occupational diseases. The first of these cases is *In re Hurle,* decided on February 28, 1914, to be reported in 104 N. E., 336, to be found in the advance sheets of the *N. E. Reporter* for March 24, 1914. In this case the court held:

"That the statute is to be liberally construed, and an employee suffering a total loss of vision in both eyes, resulting from an acute attack of optic neuritis, induced by poisonous coal tar gases escaping from furnaces about which he was required to work, was entitled to compensation, the phrase personal injuries, and injuries, being broad enough in their signification to include the injury in question."

In the more recent case of *Johnson* v. *London Guaranty and Accident Company,* decided by the same court on April 4, 1914, to be reported in 104 *N. E. Reporter,* 735, it lays down the following rules of law:

"1. Personal injury within the workmen's compensation act includes any injury or disease; as lead poisoning arising out of or in the course of employment, causing incapacity for work and thereby impairing ability for earning wages.

      *   *   *   *   *   *   *   *   *

"3. The personal injury of a lead grinder, incapacitating him from work resulting from the accumulated effect of gradual absorption of lead into his system arises out of and in the course of his employment."

The Massachusetts law is similar to our Ohio law.

While the courts of one state are not bound absolutely to follow the decisions of the courts of last resort of sister states or of foreign countries, yet it is the settled rule to receive such decisions with great respect and give them great weight in considering matters of like import in our own courts. The reason for this rule is because of the fact that cases that have been determined by the courts of last resort reach those courts with the accumulated learning of the judges. in the lower courts, aided by the knowledge and learned arguments of counsel; so that it has presented to it the combined judgment of many minds skilled and learned in the law and hence it is that this court, following this long established rule, adopts the decision of the Supreme Court of Massachusetts as the law of this court, for the purposes of this case, and especially because it is in harmony and in accord with the views of this court in the matter.

This law is designed in the construction herein given to it to protect men who imperil their health, if not their lives, to produce for the benefit of their fellow-men products that are essential and necessary in the arts and sciences, and are in so many ways beneficial and necessary to mankind. It is urged that this construction of the law will give rise to abuses and impositions on the part of those employed in these hazardous occupations, and that it will result in carelessness and heedlessness on their part. The experience of time does not justify this conclusion.

It may be urged in reply that when fire insurance first came into vogue it was predicted that there would be frequent and deliberate destruction of property in order to obtain the benefits of such insurance. Experience has demonstrated that while there may have been some cases of arson, they are so few and far between as not to be worthy of mention. The same reasoning was urged against life insurance, it being claimed it would

lead to recklessness in the manner of living, if not to deliberate self-destruction, and while there may have been, and doubtless were, some cases of self-inflicted death to obtain such insurance, yet so rare indeed have they been that no man of sound judgment would today suggest the abandonment of the very great benefits derived thereform.   The same was said as to health and accident insurance.   The experience of man has been such as to demand the increase and maintenance of these different plans of insurance.

It must not be forgotten that the moral obligation of men, their moral sensibilities and their consciences, act in restraint of the abuses that were so freely predicted with reference to these systems of insurance.   The law of self-interest and of self-preservation also operates in the same direction.

It is likewise urged in argument that those who have made a careful study of this matter of occupational diseases and compensation therefor, have found that since the adoption of these laws both in Germany and England and in several of our own states, restrictive and preventative measures have been resorted to both by the legislative bodies, our own state among the number, and by those engaged in these manufacturing industries applying new and more scientific processes in the manufacture of these deleterious substances, thus tending very materially to lesson their frequency and neutralize their evil effects, and likewise leading to the final elimination of the dangers now attendant thereon, all of which serves to increase human happiness and decrease human misery.

The demurrer to the petition will be overruled and the right of the plaintiff herein to have a hearing in this court upheld. This court has been given to understand that the state industrial commission desires to make this a test case and obtain a decision thereon from our court of last resort as soon as possible. To this end an entry may be at once prepared overruling the demurrer.